## THE EXCELSIOR GRAIN BINDER COMPANY, LIMITED, APPELLANT, *v.* GEORGE H. STAYNER, RESPONDENT.

*Subscription — payment of the ten per cent, essential to its validity.*

In an action brought to recover the amount subscribed for certain shares of stock in the plaintiff, a corporation organized under chapter 611 of the Laws of 1875, it appeared that at the time the defendant signed the subscription book, he delivered to the commissioners authorized to receive subscriptions his check for ten per cent of the amount of his subscription, but afterwards stopped payment of the check, and no part of his subscription was ever paid.

Chapter 611 of 1875 provides that "no subscription shall be received unless at the time of making it the person so subscribing shall pay to said commissioners ten per cent of the par value of the stock subscribed for, in cash."

*Held*, that the action could not be maintained, as it was essential to the validity of the subscription that the ten per cent should be paid.

*Semble*, that a subscription is not invalid because a short interval of time occurs between the actual signing of the subscription book and the payment of the money.

APPEAL by the plaintiff from a judgment, recovered on a trial before the court without a jury.

*Ludlow Fowler*, for the appellant.

*D. M. Porter*, for the respondent.

DANIELS, J. :

This action was prosecuted for the recovery of the sum of $5,000, being the amount of the defendant's subscription for 100 shares of the capital stock of the plaintiff. These shares were of the par value of fifty dollars each, and the subscription by which the defendant agreed to take them, was made before the company was completely organized. The company was incorporated under the authority of chapter 611 of the Laws of 1875. The certificate required for that purpose was filed, and the persons making it were empowered to open books for subscriptions to the capital stock, as that has been provided for by section 4 of this act. And the subscription made by the defendant was taken in the course of the proceeding for that purpose so authorized. But neither at the time when the subscription was made, nor at any time after that, did he pay to the commissioners any part of the amount for which the stock was afterwards to be issued to him. All that was done was to subscribe for the stock, and deliver his check for ten per cent of the amount of the subscription. After the company was organized the board of directors declared the subscriptions to the capital stock to be due and payable, and because of a failure to pay on the part of the defendant, this action was brought against him for the recovery of the amount. It was resisted chiefly because of the omission of the defendant to make the payment, which the statute has required for the purpose of constituting a complete subscription to the stock of such a corporation. The provision of the act upon this subject is, that the commissioners shall proceed to open books for subscriptions to the capital stock of such corporations, but no subscription shall be received unless at the time of making it the person so subscribing shall pay to said commissioners ten per cent of the par value of the stock subscribed for in cash. (Laws 1875, chapter 611, p. 756, sec. 5.)

The court at the trial held that this requirement had not been observed, that the execution and delivery of the subscriber's check for the ten per cent was not a payment of the amount of it in cash, and for that reason the subscription was ineffectual, and he never became liable upon it. Before the check was presented for payment it was countermanded by the defendant, and nothing in fact was ever received, either by the commissioners or the company itself, on this subscription. The provision contained in this act, declaring how the payment shall be made for the purpose of completing the subscription, is practically the same as that contained in the statute relating to the formation of limited partnerships. There the contribution made to the capital by the special partner is required to be paid in cash. And in the case of *Durant* v. *Abendroth* (69 N. Y., 148), it was held that a delivery of a check was not a compliance with what the law required to be done for the purpose of forming such a partnership. And as the act under which the plaintiff was incorporated, has been enacted upon this subject in terms practically identical in their effect, this decision must be accepted as controlling in this case. A different view of the effect of a check seems to have been taken in the case of *Thorp* v. *Woodhull* (1 Sandf. Ch. Rep., 411). But as this authority is subordinate to that pronouncing the judgment in the preceding case, it cannot properly be followed in the determination of this appeal. As the language employed in the enactment of this statute has been construed, it can be satisfied only by a payment in cash, or its actual equivalent. The object of the law in making this requirement was to prevent the organization of corporations upon mere paper capital. And the security of persons dealing with them require that such organizations should not be permitted. If a check could be received as a compliance with what the law has required on this subject from one person it could be from all, and the consequence of such a construction would be that a corporation might be organized without receiving a single cent of actual capital. That would induce the existence of fraudulent corporations which it must have been the object of the legislature by means of this provision to prevent. It is a wholesome and proper restraint, and should be observed and enforced according to the fair import of the terms by which it has been created. In no proper sense of those

terms can the unpaid or uncertified check of the subscriber be accepted or received as cash. And for that reason the provision, contained in this statute, was not complied with at the time when the defehdant's subscription was made. A similar provision is contained in the general railroad laws of the State. (2 R. S. [5th ed.], 669, sec. 4.) And in the case of *Beach* v. *Smith* (28 Barb., 254) it was intimated that the ten per cent required to be paid at the time of the subscription might be received in a check or sight draft. But whether it could or not was a point not presented by the case for the determination of the court, and, for that reason, what was said upon this subject cannot be accepted as authority. In that case as well as the case of the *Ogdensburg Railroad Company* v. *Davis,* mentioned in the opinion, the amount required to render the subscription valid, was in point of fact finally and actually paid, and while this was not a formal compliance with what the statute had required it was substantially so, and the transactions were sustained because the payments had actually been made in fact. This was the view which was taken in the further consideration of the case of *Beach* v. *Smith* (in the Court of Appeals, 30 N. Y., 116), and for that reason the judgment of the Supreme Court was there affirmed. No binding authority has been found allowing the payment required by the statute on such a subscription to be dispensed with. It must be made either in cash, or its equivalent actually passing into the hands of the commissioners. Neither was done in this case, and therefore what the statute has declared to be necessary, was not in this instance observed.

Because of this failure no lawful subscription was made by the defendant for the stock of this corporation. The terms of the statute are clear and explicit that no subscription shall be received by the commissioners, unless at the time of making it the person so subscribing shall pay to them ten per cent of the par value of the stock subscribed for in cash. This was a clear prohibition which they had no power to evade. They could receive the subscription in no other manner, and if the payment in cash was not made they were prohibited from permitting the party to become a subscriber. The language used upon this subject is so clear as to be incapable of being misunderstood. It was the intention of the legislature, by means of it, to render the requisite payment an indispensable condi-

tion to the validity of the subscription. If that should not be made, they could not allow the person proposing to take the stock, to become a subscriber for it. And if they did so in contravention of the clear restraint of the statute, the subscriber could acquire no right to the stock; neither could the commissioners, or the corporation, enforce the formal terms of a contract made for the payment of its price. The principle is a general one that a contract which is repugnant to, or contravenes the terms of a statute of the State, is unlawful and cannot be enforced. (*Barton* v. *Port Jackson, etc., Plankroad Co.*, 17 Barb., 397; *Seneca Co. Bank* v. *Lamb*, 26 Barb., 595–601.)

A provision of a somewhat similar nature, though not as restricted in its expression as this, was considered in the case of the *Union Turnpike Company* v. *Jenkins* (1 Caine, 381), and it was there held by the Supreme Court, the chief justice dissenting, that the failure to pay the percentage required upon the subscription, would not prevent the maintenance of an action afterwards, for its recovery. But this case was taken to the Court of Errors, and the decision made in it was reversed, because of the omission to pay the amount required to be received by the commissioners at the time when the subscription for the stock was made. (*Jenkins* v. *Union Turnpike Co.*, 1 Caine's Cases in Error, 86.) And the doctrine of this case appears to have met the approval of the court afterwards, deciding those of the *President, etc.*, v. *Hurtin* (9 *Johns.*, 217), and the *President, etc.*, v. *McKean* (11 *id.*, 98). In *Rensselaer, etc., Company* v. *Barton* (reported in a note to the case of *Lake Ontario, etc., R. R. Co.* v. *Mason*, 16 N. Y., 451, 457), the correctness of these decisions has been drawn in question, but they have never been either overruled or substantially impaired as authority. In the principal case to which the note has been appended, the validity of such a subscription was not presented for decision, for it did not depend upon the similar provision made upon this subject by section 4 of the act providing for the incorporation of railroad companies. The subscription forming the subject of that controversy was made under a preceding section of the act, and it was so held, which did not render it in terms dependent upon an accompanying payment of any amount in cash. After these two decisions were made, the validity of a stock subscription under section 4 of the act providing

for the formation of railroad corporations, was further considered by the Court of Appeals. (*Black River, etc., Co.* v. *Clarke*, 25 N. Y., 208.) The language then construed was in its effect similar to that employed in the act under the authority of which the subscription of the defendant was taken, and in the reference made to it in the opinion of the court, it was said "that the intent of this section doubtless was, that no subscription should be valid until ten per cent was paid thereon, and not that it should be invalid if a short interval occur between the actual subscription and the payment of the money. The subscription and the payment of the ten per cent must both concur to make a valid subscription. The subscription one day with payment the next would satisfy the statute, and so would actual payment at any period after subscription with intent to effectuate and complete the subscription. The writing of the name in the subscription book, should be deemed but part of the transaction and provisional or conditional, till the ten per cent is paid. (Id., 210.) A similar view was expressed in one of the opinions delivered in *Beach* v. *Smith* (*supra*). It was there stated "that the statute under which the subscription in question is made not only requires ten per cent to be paid, but it forbids the subscription to be received without such payment. It seems to me that a subscription taken in violation of this provision is not binding." These authorities plainly sanction the conclusion reached by the Court of Errors in the case of the *Union Turnpike Company* v. *Jenkins*, and that has been further very materially fortified by a similar decision in the State of Pennsylvania. (*Hibernia Turnpike Co.* v. *Henderson*, 8 Sergt. & Rawle, 219.) The act in that case required a payment of five per cent upon the price of the stock to render the subscription a compliance with its provisions, and because of a failure to pay the amount the subscription itself was held to be void. A different conclusion was reached in *Henry* v. *Vermillion, etc., Railroad Company* (17 Ohio, 187). That was a creditor's suit to enforce the payment of a subscription for the stock of the company, and in deciding it, this point received no extended consideration either upon principle or authority, but it was disposed of as a subject meriting very little attention in the case. The same observations are applicable to a like decision in the case of *Vicksburgh, etc., Railroad Company* v. *McKean* (12 Louisiana Ann., 638).

And for these reasons these cases should not be allowed to exercise any controlling authority over the disposition of the present controversy. The cases of *McFarlan* v. *Triton Insurance Company* (4 Denio, 392) and *Booth* v. *Cleveland, etc., Company* (74 N. Y., 15), have no direct or necessary application to the point in contro versy, and need not therefore be specially considered. The authorities having a material bearing upon this point are so well sustained by the terms and theory of the statute itself, as to require them to be followed, although in doing so the cases cited from the reports of these other States are required to be disregarded. As the statute must be construed, no binding subscription was made by the defendant for the stock of the company, because of his failure to make the payment mentioned in the statute, before the subscription itself could be received by the commissioners. What was done was entirely ineffectual, and for that reason it was properly held at the trial that the action could not be maintained.

The judgment, for the reasons already assigned, should therefore be affirmed, with costs.

BRADY, J., concurred.

Present — BRADY, P. J., and DANIELS, J.

Judgment affirmed, with costs.